

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 17, 2023

**BY ECF**

The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street
New York, New York  10007

    Re:   *United States v. Antwan Andrews*, 22 Cr. 82 (CM)

Dear Judge McMahon:

    For two years, defendant Antwan Andrews, a/k/a "Anatwan Andrews," a/k/a "Twan," worked as a cocaine distributor for co-defendants Quincy Hilliard, a/k/a "Tut," and Curtis Hilliard, a/k/a "Curt," in Harlem, New York. He now stands convicted and awaits sentencing for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The parties and the Probation Office agree that the applicable sentencing range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") is a term of imprisonment of 70 to 87 months. The Probation Department recommends 70 months' imprisonment; the defense counsel proposes 24 months. For the reasons set forth below, the Government submits that a term of imprisonment within the Guidelines range of 70 to 87 months is sufficient but not greater than necessary to serve the purposes of sentencing.

    **I.**    **Background**

    **a.**  **The Downtown Mafia**

    On February 8, 2022, a grand jury in this District charged nine defendants, including Andrews and the Hilliard brothers, Quincy and Curtis Hilliard — with conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(b)(1)(B). These charges stemmed from the defendants' participation in a drug trafficking organization called the "Downtown Mafia" ("DTM"), which was a group of kilogram-quantity cocaine traffickers, and their subordinates, operating primarily in the vicinity of King Towers in Harlem. (PSR ¶ 14).[1] While DTM's sales were largely concentrated in and around King Towers, members of the conspiracy also operated multiple stash houses in Manhattan and at least one stash house in New Jersey. (PSR ¶ 14).

---

[1] "PSR" refers to the Presentence Investigation Report revised May 1, 2023.

The Hilliard brothers, Brown, and Adderley were kilogram-quantity cocaine traffickers who supplied cocaine to each other in furtherance of the DTM's operations. (PSR ¶ 16). Turner was a dealer who worked principally with Brown. (PSR ¶ 16). Branch was a dealer who worked principally with Adderley and Quincy Hilliard. (PSR ¶ 16). Rivera, Latimore, and Andrews were dealers who worked principally with the Hilliard brothers. (PSR ¶ 16). The co-conspirators coordinated their narcotics activities through in-person meetings, phone communications, and Instagram chats. (PSR ¶ 14).

Between February 2021 and February 2022, members of DTM sold approximately 1.22 kilograms of cocaine and approximately 47.598 grams of crack cocaine to a confidential source and undercover law enforcement officers engaged in the investigation of the DTM. (PSR ¶ 15). Through other investigative techniques, including surveillance, witness information, social media communications, and phone contents, law enforcement identified an additional 47 kilograms of cocaine and 80 grams of crack cocaine involved in the conspiracy. (PSR ¶ 15). For example, Quincy Hilliard's cellphone contained a video of 1,232.2 grams of cocaine that was being weighed on a scale, as well as extensive narcotics-related communications with co-defendants Latimore and Branch. (PSR ¶ 15). As another example, Quincy Hilliard's Instagram account contained conversations with co-defendants Latimore, Brown, Andrews, Rivera, and Branch in which the DTM members discussed, among other things, setting up meetings and narcotics and cash using coded language. (PSR ¶ 15). And Branch's cellphone contained a secret application, disguised as a calculator, in which he stored hidden photographs, including one of semi-processed crack cocaine and another of a gun.

### b. Conduct Specific to Andrews

Andrews, the defendant, was as a cocaine distributor who worked primarily with the Hilliard brothers. (PSR ¶ 17). His role in the scheme has been corroborated by surveillance and witness testimony. (PSR ¶ 17). For example, on one occasion, on or about March 2, 2021, Andrews sold approximately 5 grams of crack cocaine to a cooperating witness ("CW-1"). (PSR ¶ 17). On another occasion, on or about August 13, 2021, Quincy Hilliard sent Andrews to sell 219.15 grams of cocaine to CW-1. (PSR ¶ 17). On at least two other occasions, law enforcement observed Andrews engaged in hand-to-hand narcotics sales or drops. (PSR ¶ 17). Andrews also communicated directly with Quincy Hilliard by phone, social media, and text in furtherance of the conspiracy. (PSR ¶ 17).

### c. Relative Culpability

A significant cocaine dealer and trusted associate of the Hilliards, Andrews's culpability is in the middle third the defendants charged in this case. His criminal record, however, compares favorably to those his co-defendants, consisting principally of a prior state conviction for selling crack cocaine.

The table below reflects the Government's Guidelines calculation and, where applicable, the sentence imposed for the defendants in the case:

| Defendant | Offense Level | Criminal History Category | Guidelines Range | Man. Min. | Sentence Imposed |
|---|---|---|---|---|---|
| Quincy Hilliard | 31 | IV | 151 to 188 mo. | 60 mo. | |
| Curtis Hilliard | 27 | I | 70 to 87 mo. | 60 mo. | 70 mo. |
| Kasien Adderley | 34* | VI* | 188 to 235 mo.* | 60 mo. | |
| | 32 | IV | 121 to 151 mo. | 60 mo. | |
| Antwan Andrews | 27 | I | 70 to 87 mo. | None | |
| Terrence Turner | 27 | IV | 100 to 125 mo. | None | 48 mo. |
| Tiran Branch | 25 | II | 63 to 78 mo. | None | |
| Derrick Latimore | 30 | III | 121 to 151 mo. | None | |
| Pedro Rivera | 27 | IV | 100 to 125 mo. | None | |

**\*** If Career Offender Guidelines apply.

### d. Plea and Guidelines Calculation

On February 8, 2023, the defendant pleaded guilty, pursuant to a plea agreement, to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). In the plea agreement, the parties stipulated that the conspiracy involved 5 kilograms and 15 kilograms of cocaine, which yields a base offense level of 30. A 3-level reduction for acceptance of responsibility reduces the total offense level to 27. The parties further stipulated to a criminal history category of I (one criminal history point), yielding a Guidelines range of 70 to 87 months' imprisonment. The Probation Office concurs in this calculation. (PSR ¶¶ 29–45, 71).

## II. Discussion

### A. Applicable Law

As the Court is well aware, although the United States Sentencing Guidelines are no longer mandatory, they provide strong guidance to courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). The Guidelines' relevance stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). After making that calculation, the Court must consider the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to deter criminal conduct and promote respect for the law, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted sentencing disparities. *Gall v. United States*, 552 U.S. 38, 50 & n.6 (2007).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

The Honorable Colleen McMahon                                                                    Page 4
September 17, 2023

      (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B)    to afford adequate deterrence to criminal conduct;
      (C)    to protect the public from further crimes of the defendant; and
      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Guidelines Sentence Is Appropriate In This Case

The Government respectfully submits that a sentence within the Guidelines range of 70 to 87 months' imprisonment is sufficient and necessary to reflect the seriousness of the conduct, to provide just punishment, and to promote general and specific deterrence.

There is no dispute that the defendant's conduct is extremely serious. Cocaine harms not just its users, but also their family and friends and the broader communities to which they belong. For this reason, major drug crimes are among "the most serious" offenses proscribed by federal law. *United States v. Dillard*, 214 F.3d 88, 101 (2d Cir. 2000); *see also United States v. Colon*, No. 10 Cr. 197 (CM), 2020 WL 4496761, at *2 (S.D.N.Y. Aug. 4, 2020) (describing cocaine as "a highly addictive drug that destroys lives, families, and communities"); *United States v. Qayyem*, No. 10 Cr. 19 (KMW), 2012 WL 92287, at *4 (S.D.N.Y. Jan. 11, 2012) (describing study in preeminent medical journal in which cocaine was found to have "second-highest mean harm score of all twenty drugs [under study], after heroin").

In this case, the defendant participated in a large-scale cocaine distribution scheme that flooded the streets of Harlem with highly addictive substances — cocaine and crack cocaine — both of which lead to devastating illness, destabilize communities, and fund vicious criminal organizations. Over the course of two years, the defendant worked with and for the Hilliard brothers, the kilogram-quantity suppliers who led the DTM, to sell and deliver drugs. Although the defendant's culpability is less than that of the Hilliard brothers, he played an important role, and the length of his involvement and the quantities in which he dealt are considerable. The seriousness of the offense weighs in favor of a substantial incarceratory sentence.

The defendant's criminal trajectory also suggests that a substantial sentence is needed to achieve specific deterrence. In 2017, the defendant was arrested and convicted of a state drug felony for selling crack cocaine. He was given a break: three years' probation. It did not work. When he was charged and arrested in this case, the defendant was given another break: bail. He repeatedly violated the conditions of his bail, including by leaving his residence without approval dozens of times and testing positive for marijuana. (PSR ¶ 7–9). The defendant's recent decision to surrender to pre-sentencing detention is commendable, but it also reflects the reality that his adjustment to supervision has been poor. A substantial term of imprisonment is necessary to deter the defendant from reverting to crime.

The Honorable Colleen McMahon                                                                                          Page 5
September 17, 2023

       The defendant acknowledges that "narcotics sales are '*not* victim-less crimes,'" (Mem. at 4), and assures the Court that he now "deeply feels the betrayal, disgrace, and humiliation his behavior has caused his family as well as the incalculable harm that narcotics visit on society," (Mem. at 6).[2] The problem is that his conduct, including his two years of working for the Hilliards and his disregard for his bail conditions in this case, do not match his words. Time and time again, in exchange for nothing more than financial gain, the defendant injected into his community a substance that destroys lives. And he did so at a time when deaths from drug poisoning are on the rise. Between 2010 and 2018, overdose deaths involving cocaine increased by approximately 251%.[3] In 2018, New York led the nation with 1,276 deaths resulting from overdoses involving cocaine.[4] In 2019, nearly 16,000 Americans died as a result of drug overdoses involving cocaine and currently, cocaine is involved in almost one in five overdose deaths.[5] Even short of death, the consequences of cocaine addiction can be crippling for a user: paranoia, psychosis, stroke, seizures, respiratory failure, and organ damage.[6]

       These devastating statistics make obvious the need for a serious sentence to promote general deterrence and respect for the law. Drug crimes are lucrative, and the number of individuals willing to engage in such crimes for even modest profit is, unfortunately, too high. A sentence within the Guidelines range will both advance specific deterrence for the defendant and also deliver the message to the public that the narcotics business is unacceptable.

---

[2] "Mem." refers to the defense sentencing submission filed September 10, 2023 (Dkt. 239).

[3] *See* Drug Enforcement Administration, National Drug Threat Assessment (March 2021), *available at* https://www.dea.gov/sites/default/files/2021-02/DIR-008-1%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

[4] *Id.*

[5] *See* Centers for Disease Control and Prevention, Drug Overdose, *available at* https://www.cdc.gov/drugoverdose/deaths/other-drugs.html.

[6] *See* National Institute on Drug Abuse, What Are the Long-Term Effects of Cocaine Use? (May 2016), *available at* https://www.drugabuse.gov/publications/research-reports/cocaine/what-are-long-term-effects-cocaine-use.

The Honorable Colleen McMahon　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6
September 17, 2023

### III. Conclusion

      For the reasons set forth above, the Court should impose a sentence within the Guidelines range of 70 to 87 months' imprisonment.

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

by: _____
        Ashley C. Nicolas / Alexander Li / Matthew J. King
        Assistant United States Attorneys
        (212) 637-2467 / -2265 / -2384